Thank you, Your Honor. May it please the Court. Because the Board's decision was predicated on a 1999 conviction that has since been expunged, the deportation order should be reversed. The words Congress chose in defining conviction fail to draw any line between convictions expunged from the merits and convictions expunged for rehabilitative reasons. The statute defines conviction in a single, unitary, indivisible way. It requires a formal judgment of guilt entered by a court. And there is no formal judgment entered by any court after a conviction has been expunged. The government nowhere explains how the statute, with this unitary and categorical focus, can plausibly be read consistent with Clark v. Martinez to take on different meanings in different factual contexts. I mean, I don't regard Clark as directly on point. I understand Clark. It says, listen, it's the same word or the same phrase. It's got to mean the same thing when used in a similar context. I got that part. But that's a general principle. We all know that. I don't need to read Clark for that principle. As I get the distinction that is clearly in the case law that you're now arguing against, between a rehabilitative expungement and an expungement because of a procedural or substantive problem, the case law is distinguishing between a valid conviction expunged because of rehabilitation reasons and an invalid conviction, which is eliminated because there was a procedural or a substantive problem with the conviction. And so what the case law is doing is saying, well, the word conviction means valid conviction. How do you respond to that? Well, I respond to that the text doesn't support that distinction, which is precisely why the text only says conviction. Well, it says conviction, but it defines it as a formal judgment of guilt entered by a court. The only way that the BIA can say that when a conviction is expunged on the merits that there's no longer a conviction is because the conviction wipes it out. It says that there is no formal judgment entered by a court. There's not a document in a clerk's office somewhere that says that you were convicted after the expungement. But it's still there. We just pretend it's not. That's true, Your Honor, but that's the common and settled understanding of what it means to have a conviction expunged. Now, there are two ways to, if we accept your argument, there are two ways to deal with it. One is to say that an expungement for rehabilitative purposes is not a conviction. And the other one is to say even if it's an invalid conviction, we have to count it. Oh, well, I don't like that idea.  I don't either, Your Honor. Your Honor, the Fifth Circuit has come out that way, but has backtracked, and other circuits have rejected that approach. The Board has rejected that approach because they've realized it would create a constitutional issue of a pretty obvious magnitude. You can't have someone deported because they were wrongfully convicted and were actually innocent. But the problem is, if you look what Congress actually wrote into the statute, we're not saying that it's not a wrongful conviction. It's a discretionary legislative mandate that once people have, you know, shown promise of rehabilitation, then the conviction can be expunged. That doesn't equate to a wrongful conviction. No, but it does eliminate a formal judgment of guilt entered by a court, which is exactly our point. If you look to cases like this Court's decision in Nath and the Sixth Circuit's decision in Pickering, they look and recognize you have the same state court conviction. You have the same state court order expunging the conviction. And they realize there is no longer a formal judgment of guilt entered by a court. Whether the BIA recognizes that as a valid, deportable conviction turns on the reason the conviction was expunged. But the statutory text doesn't differentiate between the reason a conviction was expunged. Well, the statutory text says any alien who at any time after admission has been convicted of a violation, he was convicted of a violation. He was, Your Honor, but for you. So literally reading the statute, it covers. Well, and if the statute were read that way, it would run headlong into a constitutional problem, because that would say that someone who is convicted but is actually innocent. And that's why. What's the constitutional problem? Clark against Washington? Clark against Martinez? No, Your Honor. The constitutional issue would be a basic Fifth Amendment due process question of the government deporting someone on the grounds that they were wrongfully convicted and were actually innocent. But he wasn't wrongfully convicted. But the same statutory text has to mean the same things in all cases. And that's the principle from Clark. What's the statutory text? The statute says a conviction is a formal judgment of guilt entered by a court. And that's really the. . . That occurred. I'm sorry? That occurred. I'm sorry? That occurred. It was a formal conviction entered in a court. It did. But reading the statute that way. . . And this is what Judge Fletcher was saying. You could construe the statute in one of two ways. Our submission is there are only two ways to read it. You either say a formal judgment of guilt entered by a court means at any point in time, as long as it happened in the past, it happened, you were convicted. Or it can mean a formal judgment of guilt that exists today. It is a live, non-expunged, existing conviction. That's the only way to read formal judgment. That's not what the statute says. Well, Your Honor, if the statute were construed the way the Fifth Circuit has construed it, to say that anyone convicted at any point in time is deportable, no matter whether the conviction was expunged, you'd run into constitutional avoidance considerations. You'd fight longstanding BIA policy. You would run into that if the conviction was an unlawful conviction. But you don't run into that if, because of desires to rehabilitate people and give them a clean slate, a State decides to expunge. It's different. That is precisely correct, Your Honor. And Clark v. Martinez made abundantly clear that you cannot construe a statute by ignoring. . . For detention purposes, because it doesn't make any difference in detention purposes. The purpose of Clark was to limit detention. Respectfully. . . It has nothing to do with what is going on here. The point of Clark and what we're pulling out is not the specific, the statute at issue in Clark. It's the legal principle and the methodology for how to construe a statute the appropriate way. I think you're reading Clark for more than it says. What Clark says is that you look to the lowest common denominator. You ask, if you need to construe a statute a certain way to avoid a constitutional issue, that construction applies even if you're dealing with certain aliens who would not have that constitutional right in jeopardy under that construction. Counsel, may I ask you, is your interpretation of Clark, are you arguing that your interpretation of Clark reverses our, by implication, our cases that say that expunged convictions may still be used for immigration purposes? Are you saying Clark implicitly overruled those cases? I think Clark repudiated and undermined the analytical foundation for the BIA's reading and the Court's approval of that reading. Because Clark clarified that. Our case authority, the Ninth Circuit's case authority. Yes. That's a very tall order to say that we have the authority to disregard our prior case precedent based on a case that you're interpreting as negating the principles in those cases. We, I think it does negate the principles, but we don't need to climb that, quite that tall of an order, because this Court's precedent also confirms that if a new argument has been presented that a prior panel hasn't considered, the earlier decision is not binding. And that makes good sense, because it shouldn't be the case that an argument that a panel didn't consider, it wasn't raised, it wasn't resolved, controls on an important legal issue for litigants who are now raising that new question. But the problem with that approach is it seems pretty clear from our precedent that we've said that the, that convictions that have been expunged may be nevertheless considered in determining immigration issues. So what about that ruling are you saying was not, is not at play? This is exactly why we think that Clark changes the game. The Court has said that certain convictions expunged for rehabilitative reasons can't count. But the Court's also said that convictions expunged on the merits can count. Where in the statutory phrase does it differentiate between the reason there's still, or still or isn't still, a formal judgment of guilt entered by a court? It's the same state act that expunges a conviction. No, I understand the argument, but in a sense you've given the argument on the other side when you say that, well, if we were to treat as valid convictions and therefore attach adverse consequences to them, if in fact they're not valid convictions, that would raise a constitutional problem. I agree, that does raise a constitutional problem. So why is it not within the authority of the BIA to construe this statute as to say, as to mean, when it says conviction, to mean valid conviction? Because that then avoids the constitutional problem. Why is that an impermissible interpretive move? We would submit it's impermissible because there's simply no textual grounding for that. There is nothing in here that says a valid formal judgment. It doesn't, Congress could have said we care about the underlying adjudication of guilt. We care that you engaged in this conduct. And in certain cases, Congress does render deportable the engaging in conduct without a conviction. But Congress chose in this context to say you need the conviction. There needs to be that document in the file of a clerk's office that says you were actually convicted. And it's why the court, the cases that look at this and have adopted the BIA policy without asking, are they actually reading this statutory language in two very different ways? They ask, what is the reason for the expungement? And the BIA for almost half a century recognized that under this particular California provision, an expungement order did wipe out the conviction. So we know that the State act that wipes out the conviction actually has effect and has effect in exactly the same way, even if it's for rehabilitative purposes or for merits purposes. So the question is where in the text of the statute the BIA has been silent in giving any reason on where they're finding us. The statute permits a distinction between the reason a conviction has been expunged and the reason there no longer is a formal judgment of guilt. Sotomayor, I think we understand your argument. I'm not sure we yet agree with it, but I think we understand it. Yeah. No, I appreciate the courts entertaining it. But we really do think if you look at the cases and you look at the agency decisions, you'll see it is absolutely divorced from the text of the statute. And if the BIA could be so creative to say we're going to invent the statute by reading words in like a valid formal judgment, they could have done exactly the same thing with the statute it issued in Clark. Because that statute said the BIA can detain an alien beyond the deportation period. And they could have said, well, we read that to say we can detain you indefinitely if that doesn't raise a constitutional question, but we can't detain you indefinitely if it doesn't. And that reading under the BIA's approach would be valid. And that's exactly what the Court rejected in Clark. Can I ask you, counsel, is there any circuit court that has adopted your approach? There is not a single circuit court that has addressed the question. And we think what happened is that before Clark v. Martinez and Judge Fletcher is exactly right that this is not a new principle, but I think it was almost a forgotten principle, the earlier decisions took hold, created the inertia where people were looking at the BIA's policy and saying, this makes intuitive sense. And it does. We don't Well, but that's what we do. The BIA is charged with interpreting the immigration statutes and regulations. So if there is an ambiguity and they're given the authority to interpret it and their Well, Judge Rawlinson, yes and no. You defer to a reasonable construction of statutory text. Chevron doesn't say come up with anything that's reasonable and we'll approve it. You have to tether it to the actual statute. Right. But the statute is ambiguous and there is more than one way to interpret it. If the BIA posits one interpretation and that interpretation is reasonable, we defer to it. Well, but there are only two ways to interpret the statute. Either a conviction means an existing conviction or means a conviction Well, that's your view. It is, but I would submit that the BIA has not explained how they're reading the text of this provision to provide any other third alternative. And that is our argument on that point. Okay. We also believe that our Petitioner is entitled to withholding of removal. The government has conceded he's at least entitled to remand under Miguel-Miguel for the BIA to apply the correct standard. Right. We think the standard also fails for its vagueness problems and because for largely the same reasons. But we don't have to get to that issue if we remand for a look at whether or not there's a particularly serious crime. Sure, Your Honor, but we think that's putting the cart before the horse because we do think that if the standard doesn't apply at all, then there's no reason to remand to apply standard. That's Clark against Martinez again. This point is not exactly Clark versus Martinez, but we But a variant of it. Well, not on the vagueness point. We think that this is just a question of saying there are two arguments. We're saying you don't even get to the box of whether this is a particularly serious crime under the appropriate Franteschi standard. You know, it's uphill work to argue that. I mean, there's so many vague criteria that the BIA uses that are built into the  What is extreme and unusual hardship? That's, I think, just as vague as particularly serious crime. I mean, these are unrevealable decisions. We just had an opinion written by Judge Graber that what constitutes a particular particularly serious crime we can't even review. I mean, boy, that's uphill work to make that argument. Well, you can't review it if it's on the merits, but you can review the statutory challenge that it actually doesn't say anything at all, that it's an empty, meaningless standard. I know. I understand. But we understand the Court's concerns. Okay. Why don't we hear from the other side, and we'll give you a chance to respond. Thank you very much. May it please the Court. Thank you, Mr. Chairman. My name is Jeffrey Liest, appearing on behalf of the Attorney General. In the instant case, the agency properly determined that the Petitioner was removable for having been convicted of an aggravated felony. The issue that's really at the heart of the case that's been discussed is whether or not the Petitioner's expunged conviction, which was expunged under a revoked Petitioner. Let me just clear the deck to make sure. Sure. I mean, it's in the brief, but I want to make sure. You concede that we need to remand because there's been an improper retroactive application of the BIA decision? Correct. The particular serious crime issue should be remanded. And as the Court has discussed, because there is no, I guess, for lack of a better term, correct decision right now from the Board, that the other issues are solved. So the Board has to apply its pre-matter-of-Y.L. decision?  It's matter-of-factual. Matter-of-factual. So we've got that clear. Okay. Got it. All right. Turning to the conviction issue, I think Judge Rawlinson kind of pointed out one of the main things, is that the Board is tasked with, if there's any ambiguities or silences in a statute or statutory term, that it can fill in those gaps. I think that the reading of Clark is premised on the fact that the statute in that case did not leave any room for interpretation. You couldn't differentiate between the subclass civilians. In this case, the Court has already, in matter, excuse me, in Murillo-Espinoza, given Chevron deference to the Board's interpretation. What that means is that they've already found there's issues of silence on this judgment of guilt handed by a judge and said, well, this doesn't discuss anything about whether it has any effect on expungements. And that's why it went to matter of Roldan-Saldaño and subsequent cases like matter of Pickering. Because the case, because the statute is silent, that's why the Board went to that next step and then interpreted it to differentiate between different types of expungements. This Court, as I just said, has already adopted that. Every other circuit except for the Fifth Circuit has already adopted that. So the statute does not play on its face that it can't differentiate between subclass civilians. Rather, because it's silent, the Board is then given the task of interpreting that. It's interpreted in a way that this Court has already deemed to be acceptable. May I just make sure that I'm seeing correctly the procedural posture this case is in? Sure. So the aggravated felony termination is unchallenged at this point. Correct. Is that correct? Correct. So that means that the petitioner is not eligible for asylum or cancellation of removal. Correct. So all we have on the table is cat relief and withholding. I believe cat was not challenged either. Cat wasn't challenged. So it's withholding of removal is the only thing that we're talking about? Correct. But in the context of the particular serious crime determination. Right. So if there's a determination that a particularly serious crime has been committed, then the withholding of relief, withholding of removal relief is not available. Is that where we are? Right. Okay. And as we discussed, we want to remand on that issue because the Board applied the matter-of-while principle. So that would be the only thing that would be before the Board if the case were remanded? Correct. Okay. Correct. If it were remanded and we agree with you. Correct. Yes, Your Honor. Got it. Okay. Also, is there – what other possibility would there be if the panel disagreed with you? You mean in terms of whether or not the statute leads the way? Right. If you agree with the Petitioner's interpretation that the statute under Clark cannot be read this way, then I believe that would render him not removable because he no longer has a conviction and thus could not have a conviction for an aggravated felony. Okay. I got it. If you agree with the government's position on that issue, then we would then move to the remand based on the particular serious crime determination. All right. I'm with you. If there are no further questions. Thank you. Thank you. I'll bang my head for a few more minutes. Well, you'll bang your head for 33 seconds. I read a lot of it. If you really have something new to say, of course, you get to say it. But I have a feeling we know what you're going to say. I think you do know what I'm going to say. What I will say, though, is if you do read the circuit decisions on this, and I've read all of them, you will actually see that none of them engage the text and that Chevron does not permit the government to invent a policy, which is what Clark reminds everyone. But your basic argument is that Clark overruled, sub saliencio overrules the Armand Murillo decision written by Judge Hawkins. Well, whether you say sub saliencio overrules or not, I think this is a new argument that no court has considered. Yeah. Clark is so inconsistent with that that it amounts to a de facto overruling. That's your argument. It's really a new argument, and being a new argument, the panel can consider. Okay. Thank you very much. Okay. Thank you. Whether we agree with the argument or not, I think that the argument was very well made. Good. Okay. Thomas v. Holden now submitted for decision.
judges: Hellerstein, Fletcher, Rawlinson